IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES JOSEPH MATTIS                    :              CIVIL ACTION
                                       :
        v.                             :
                                       :
ANDREW SAUL,                           :
Commissioner of Social Security        :              NO.  19-3544

## MEMORANDUM OF DECISION

THOMAS J. RUETER
United States Magistrate Judge                        June 18, 2020


        Plaintiff, James Joseph Mattis, filed this action pursuant to 42 U.S.C. §

1383(c)(3), which incorporates by reference 42 U.S.C. § 405(g), seeking judicial review of the

final decision of the Commissioner of the Social Security Administration ("Commissioner")

denying his claim for child's supplemental security income and supplemental security income

(collectively "SSI") under Title XVI of the Social Security Act ("Act").

        Plaintiff filed a Brief and Statement of Issues in Support of Request for Review

(Doc. 13) ("Pl.'s Br.") and defendant filed a Response to Plaintiff's Request for Review (Doc.

14) ("Def.'s Br.").  For the reasons set forth below, the court recommends that plaintiff's

Request for Review be **DENIED**.

## I.       FACTUAL AND PROCEDURAL HISTORY

        Plaintiff filed an application for benefits on February 7, 2017, alleging disability

beginning June 16, 2015.  (R. 135-43.)[1]  Plaintiff's claims were denied initially; he then filed a

---

[1]      Plaintiff was nineteen years old on the alleged onset date.  See R. 135.  The ALJ noted
that plaintiff's claim for child benefits was considered under 20 C.F.R. § 404.350(a)(5) which
provides for the payment of disabled child's insurance benefits if the claimant is eighteen years
old or older and has a disability that began before the attaining age twenty-two.  See R. 16.

timely request for a hearing.  (R. 49-74, 77-89.)  A hearing was held on September 21, 2018,

before Administrative Law Judge ("ALJ") Jasper J. Bede.  (R. 29-46.)  Plaintiff, represented by

counsel, appeared and testified.  Donna M. Nealon, a vocational expert ("VE"), also testified.  In

a decision dated November 7, 2018, the ALJ found that plaintiff was not disabled under the Act.

(R. 15-28.)  The ALJ made the following findings:

1.　　Born on August 25, 1995, the claimant had not attained age 22 as of June 16, 2015, the alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).

2.　　The claimant has not engaged in substantial gainful activity since June 16, 2015, the alleged onset date.  (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.　　The claimant has the following severe impairments: hypertrophic cardiomyopathy, obesity, neurodevelopmental and intellectual disorders (20 CFR 404.1520(c) and 416.920(c)).

4.　　The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.　　After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations: simple, routine, and repetitive (1-2 steps) tasks, no working with others in a team work environment, and no interactions with the general public.

6.　　The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7.　　The claimant was born on August 25, 1995 and was 19 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.　　The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.　　Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, 416.969a).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from June 16, 2015, through the date of this decision (20 C.F.R. 404.350(a)(5), 404.1520(g) and 416.920(g)).

(R. 17-25.)

Plaintiff filed a request for review of the decision of the ALJ that was denied and the ALJ's decision became the final decision of the Commissioner.  (R. 1-11, 134.)  Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II.    STANDARD OF REVIEW

The role of this court on judicial review is to determine whether there is substantial evidence in the record to support the Commissioner's decision.  Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (citing 42 U.S.C. § 405(g)), cert. denied, 571 U.S. 1204 (2014); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence is more than a mere scintilla of evidence, but may be less than a preponderance of the evidence.  Jesurum v. Sec'y of U.S. Dep't of Health and Human Serv., 48 F.3d 114, 117 (3d Cir. 1995).  This court may not weigh evidence or substitute its conclusions for those of the fact-finder.  Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)).  As the Third Circuit has stated, "so long as an agency's fact-finding is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings."  Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986).

3

To be eligible for benefits, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Specifically, the impairments must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Under the Act, the claimant has the burden of proving the existence of a disability and must furnish medical evidence indicating the severity of the impairment. 42 U.S.C. §§ 423(d)(5), 1382c(a)(3)(H)(i).

The Social Security Administration employs a five-part procedure to determine whether an individual has met this burden. 20 C.F.R. §§ 404.1520, 416.920.[2] This process requires the Commissioner to consider, in sequence, whether a claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment which meets or equals the requirements of a listed impairment; (4) can perform past relevant work; and (5) if not, whether the claimant is able to perform other work, in view of his age, education, and work experience. See id. The claimant bears the burden of establishing steps one through four of the five-step evaluation process, while the burden shifts to the Commissioner at step five to show that the claimant is capable of performing other jobs existing in large numbers in the national economy. Hess v. Comm'r of Soc. Sec., 931 F.3d 198, 201 (3d Cir. 2019).

---

[2]   For purposes of this opinion, the court will refer to the version of the relevant regulation in effect at the time of the ALJ's decision on November 7, 2018.

III.    BACKGROUND

At the September 21, 2018 administrative hearing, plaintiff testified that he was twenty-three years old and had a high school education.  (R. 33.)  He is six feet, two inches tall and at that time weighed 290 pounds.  Id.  Plaintiff was unemployed and has never held a job. (R. 33, 40.)[3]

Plaintiff explained his alleged onset date of June 16, 2015 as the day he went to an amusement park with his father and brother.  (R. 34.)  Plaintiff stated, "[i]t was around 100 degrees and we were walking around for hours.  And as we returned – as we were leaving through the parking lot, it was about [a] mile walk to the car, about a quarter of the way through the parking lot I started feeling stinging and like a ton of rocks were on my chest, make it unable [sic] for me to walk or breathe."  Id.  After presenting to the hospital that day, plaintiff was diagnosed with hypertrophic cardiomyopathy.  See R. 290.

At the administrative hearing, plaintiff indicated that he felt "a little short of breath" and he had a headache.  (R. 34.)  When asked what bothered him most about his various conditions, plaintiff identified the "random onset chest pains" which occur "every day, sometimes two to three times a day, sometimes even more."  (R. 34-35.)  Plaintiff explained that he also has "really bad stomach problems," noting that "it is believed that" he has colitis.  (R. 35.)  According to plaintiff, he experiences tough pain in the middle of his stomach on a daily basis.  (R. 36.)  Plaintiff stated that the pain occurs "a lot in the morning, and then sometimes randomly in the evening."  Id.  Plaintiff stated that he also experiences random dizziness and

---

[3]      Plaintiff stated that he tried work with his father who is a painter "for a little bit" but the work was "too difficult" because plaintiff "can't sit there as long as he needed me to without starting to feel a little lightheaded and sick."  (R. 41.)

migraines.  (R. 35.)[4]  When he has a migraine, he takes Motrin and lays down for twenty minutes

or longer.  Id.  Plaintiff listed the medication that he takes, which includes medication to treat

high blood pressure and to manage cholesterol.  (R. 36.)  Plaintiff also noted that he had recently

been diagnosed with sleep apnea and that he has difficulty sleeping which causes him to awaken

at random hours.  (R. 37, 38-39, 43.)  Plaintiff estimated that he sleeps between three to five

hours per night.  (R. 39.)

        At the time of the administrative hearing, plaintiff lived in a house with his

mother and twenty-one-year-old brother.  (R. 37.)  Plaintiff typically begins his day "[b]etween

11:00 and 12:00."  Id.  He does not eat when he awakens because it causes stomach pain, but

rather will first eat around 3:00 to 4:00 in the afternoon.  Id.  When asked how he spends his day,

plaintiff indicated that he plays video games, plays cards with his father, or works on puzzles.

(R. 38.)  Plaintiff stated that he tries to go for a walk at night, but that he finds it difficult.  Id.

Plaintiff has never had a driver's license.  (R. 39.)  Plaintiff indicated that he used to go fishing

for fun, but that he is no longer able to do so because "due to being out there in the water and it

bumping around starts to cause [his] chest to hurt now."  (R. 41-42.)

        In response to questioning from plaintiff's counsel, plaintiff explained that he

feels "very drained" during the day due to a lack of sleep at night.  Id.  This makes it difficult for

plaintiff "to keep a steady pace" and it "often" makes him feel "lightheaded and dizzy."  Id.

Plaintiff lays down and takes aspirin to alleviate these symptoms.  Id.  According to plaintiff, he

cannot remain seated or standing for long periods of time.  (R. 40.)  If he experiences chest pains,

he must lay down.  Id.  He estimated that this occurs six to seven times each day.  Id.  Plaintiff

---

[4]     Plaintiff stated that the migraines occur randomly, either on a weekly or monthly basis.
(R. 35.)

also stated that aspirin and Motrin used to alleviate his symptoms, but that they no longer are as effective as they once were.  (R. 41.)  Plaintiff acknowledged that he has good and bad days; he described a good day as one when he has no headaches and has one to two chest pains.  (R. 42.)

In response to the ALJ's query, the VE explained that sedentary work is defined as work that involves lifting a maximum of ten pounds on an occasional basis, "a negligible amount on a more frequent basis," and "would generally involve work that would be seated throughout the day."  (R. 44.)  The ALJ then asked the VE to consider a hypothetical individual who is capable of sedentary work consistent with that definition and as defined more extensively in Social Security Administration regulations that "does not involve contact with the general [public] and with simple one or two-step works with no working closely with other people, as in a teamwork situation."  (R. 44-45.)  The VE opined that such individual could engage in work activity such as: lens inserter (for which there are approximately 256,000 jobs in the national economy); toy stuffer (for which there are approximately 393,000 jobs in the national economy); and nut sorter (for which there are approximately 538,000 jobs in the national economy).  (R. 45.)  Such exemplary jobs have a specific vocational preparation ("SVP") of two.[5]  Id.  The VE also opined that if plaintiff's testimony were accepted as presented, plaintiff could not engage in the identified jobs.  Id.  In response to questioning by plaintiff's attorney, the VE confirmed that if plaintiff was off-task ten to fifteen percent of the workday and was absent from work at least two days each month, then plaintiff would not be capable of engaging in work.  (R. 45-46.)  The ALJ then adjourned the hearing.  (R. 46.)

---

[5]      "Special Vocational Preparation is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility need for average performance in a specific job-worker situation."  See Appendix C, Dictionary of Occupational Titles, 1991 WL 688702.

# IV.    DISCUSSION

The ALJ found that the evidence of record supports a finding that plaintiff has severe impairments, but none of which meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 17-20.)  Ultimately, the ALJ concluded that plaintiff retains the residual functional capacity ("RFC") to perform sedentary work as detailed in his decision.  See R. 20.

Pursuant to the Commissioner's regulations, RFC refers to the most a claimant can do despite his limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a).  The RFC assessment must be based upon all relevant evidence, including medical records, medical source opinions, and a claimant's description of his own symptoms.  The final responsibility for determining a claimant's RFC is reserved exclusively for the Commissioner, who will not give any special significance to the source of another opinion on this issue.  20 C.F.R. §§ 404.1527(d), 419.927(d).[6]  See also 20 C.F.R. §§ 404.1546(c), 416.946(c) ("If your case is at the administrative law judge hearing level . . . the administrative law judge . . . is responsible for assessing your residual functional capacity.").

Plaintiff presents several arguments that challenge the ALJ's RFC assessment. According to plaintiff, the ALJ improperly evaluated the opinion of treating physician Anjuli Owens, M.D.  (Pl.'s Br. at 6-8.)  Plaintiff also avers that the ALJ failed to take into account the cumulative effect of plaintiff's impairments.  Id. at 8-9.  In addition, plaintiff contends that the ALJ posed an improper hypothetical question to the VE, resulting in flawed conclusions by the VE.  Id. at 9-10.  Defendant counters that the ALJ complied with Social Security regulations and

---

[6]    The court notes that 20 C.F.R. §§ 404.1527 and 416.927, rather than 20 C.F.R. §§ 404.1520c and 416.920c, apply because plaintiff's claim was filed before March 27, 2017.

case law in his evaluation of the evidence and supported his RFC finding with substantial evidence.  (Def.'s Br. at 5-10.)

### A.      Consideration of Opinion Evidence

In reaching the conclusion that plaintiff retains the RFC to perform a range of sedentary work, the ALJ offered a comprehensive assessment of the evidence of record.  See R. 18-22.  That is, the ALJ considered plaintiff's testimony at the administrative hearing and discussed the medical record evidence in detail.  (R. 20-24.)  The ALJ also considered and analyzed the opinion evidence.  (R. 23.)  With respect to the opinion of Dr. Owens specifically, the opinion lists certain functional limitations that ultimately were not included in the RFC assessment.  See R. 494-99.[7]  Instead, the ALJ adopted certain of the limitations contained

---

[7]      Dr. Owens completed a Cardiac Residual Functional Capacity Questionnaire dated September 28, 2018.  See R. 494-99.  The opinion reflects that Dr. Owens began treating plaintiff in April 2016 for hypertrophic cardiomyopathy and met with plaintiff two to three times per year.  (R. 494.)  Dr. Owens listed plaintiff's symptoms as chest pain, shortness of breath, fatigue, and palpitations.  Id.  Dr. Owens indicated that plaintiff's pain symptoms occur "with activity/exertion."  (R. 495.)  In addition, Dr. Owens checked "yes" in response to a question that queried whether plaintiff has "marked limitation of physical activity, as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity, even though [the] patient is comfortable at rest."  Id.  Dr. Owens indicated that stress can exacerbate his symptoms, and that plaintiff is capable of low stress jobs, reasoning that plaintiff "has hypertrophic cardiomyopathy with symptoms of obstruction."  Id.  Dr. Owens also checked "yes" in response to the question whether plaintiff's "physical symptoms and limitations cause emotional difficulties such as depression or chronic anxiety."  Id.  Dr. Owens explained that plaintiff "is anxious about healthcare and becomes anxious around office visits."  Id.  Dr. Owens also checked "yes" in response to the question whether "emotional factors contribute to the severity of [plaintiff's] subjective symptoms and functional limitations."  Id.  Dr. Owens opined that plaintiff's experience of cardiac symptoms is "frequently" severe enough to interfere with attention and concentration.  (R. 496.)  In addition, Dr. Owens indicated that plaintiff's impairments are reasonably consistent with the symptoms and functional limitations described in the evaluation.  Id.  After listing plaintiff's then-current medications, Dr. Owens indicated that plaintiff "may have some fatigue" and described plaintiff's prognosis as "fair."  Id.

With respect to plaintiff's functional capabilities, Dr. Owens estimated that plaintiff can walk two to three city blocks without rest, sit for one hour before needing to get up, stand for thirty minutes before the need to sit or walk, and would need a job that permits shifting positions at will from sitting, standing, or walking.  (R. 496-97.)  In addition, Dr. Owens indicated that

within the opinion of Dr. Owens, discounting the opinion to the extent that it did not find support in the record.  See R. 23.

According to plaintiff, Dr. Owens' opinion supports his claims for benefits and establishes greater limitations than found by the ALJ and the ALJ erred in failing to adopt the limitations contained in the opinion.  However, plaintiff's argument does not find support in the Commissioner's regulations, Third Circuit case law, nor the record in this case.

Generally, the Commissioner's regulations dictate that an ALJ must give medical opinions the weight he deems appropriate based on factors such as whether the physician examined or treated the claimant, whether the opinion is supported by medical signs and laboratory findings, and whether the opinion is consistent with the record as a whole.  See 20 C.F.R. §§ 404.1527, 416.927.  With respect to treating physicians specifically, the regulations provide that an ALJ shall give a treating physician's opinion controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and it is not "inconsistent with the other substantial evidence" in the record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The Third Circuit has noted that an ALJ shall "accord treating physicians' reports

---

plaintiff would need to take unscheduled breaks during an eight-hour shift, which would occur "whenever he has symptoms, a few times a day or with any exertion."  (R. 497.)  The recovery time would depend on the extent of symptoms, from two to fifteen minutes.  Id.  With respect to plaintiff's ability to lift and carry in a competitive work situation, Dr. Owens opined that plaintiff can lift and carry less than ten pounds frequently and ten pounds occasionally.  (R. 498.)  In addition, plaintiff was assessed as occasionally able to twist, rarely able to stoop, crouch or climb stairs, and never able to climb ladders.  Id.  With respect to environmental restrictions, plaintiff was told to avoid all exposure to extreme cold, extreme heat, and humidity.  Id.  He was told that he had no restrictions with respect to wetness and noise, but that he should avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, and hazards.  Id.  Dr. Owens checked "yes" in response to the question whether plaintiff's impairments are likely to produce good days and bad days, noting that on average plaintiff is likely to be absent from work "about two days per month" as a result of the impairments or treatment.  (R. 499.)  Dr. Owens also noted that "[t]his paperwork was completed based on his cardiac studies.  He reportedly has learning disabilities and anxiety not assessed by my practice."  Id.

great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (internal citations omitted). The court subsequently explained, however, that "Morales v. Apfel requires that 'the ALJ accord treating physicians' reports great weight,' but there is no requirement to accept those opinions if they are not supported by sufficient evidence in the record." Fullen v. Comm'r of Soc. Sec., 705 F. App'x 121, 125 (3d Cir. 2017) (not precedential).[8]

The Commissioner's regulations further direct that the ALJ must consider the supportability of an opinion in deciding the weight to give that opinion. See 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). The Third Circuit has reiterated the well-established standards for weighing opinion evidence. The court stated:

> An ALJ may "weigh the [conflicting] medical evidence and draw his own inferences." Brown v. Astrue, 649 F.3d 193, 196-97 (3d Cir. 2011) (quoting Kertesz v. Crescent Hills Coal Co., 788 F.2d 158, 163 (3d Cir. 1986)). Additionally, an ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record. See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001) (quoting 20 C.F.R. § 404.1527(d)(2)).

---

[8]     If the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason. Morales, 225 F.3d at 317 (citing Plummer, 186 F.3d at 429). That is, a treating source's opinion may be rejected "on the basis of contradictory medical evidence," Plummer, 186 F.3d at 429, or if it is unsupported by sufficient clinical data, Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985). An ALJ may not reject a treating physician's opinion based upon his own credibility judgments, speculation, or lay opinion. Morales, 225 F.3d at 317.

Brunson v. Comm'r of Soc. Sec., 704 F. App'x 56, 59 (3d Cir. 2017) (not precedential).  See also
Plummer, 186 F.3d at 429 (An ALJ "may afford a treating physician's opinion more or less
weight depending upon the extent to which supporting explanations are provided.").
Furthermore, in assessing the medical evidence, "[a]n ALJ may accept some portions of a
medical source's opinion while rejecting other opinions from the same source."  Connors v.
Berryhill, 2017 WL 4400758, at *5 (E.D. Pa. Sept. 29, 2017).  In the present case, the ALJ's
analysis was congruent with these standards.

        At step three, the ALJ considered the evidence of record to determine whether
plaintiff's physical or mental impairments met or equaled the severity of a listed impairment.  (R.
18-20.)  When considering the evidence in the context of the RFC explanation, the ALJ
determined that plaintiff's medically determinable impairments could reasonably be expected to
cause the alleged symptoms, but that plaintiff's statements concerning the intensity, persistence,
and limiting effects of these symptoms are not entirely consistent with the medical evidence.  See
R. 21-23.  Prior to discussing the opinion evidence, the ALJ presented a thorough analysis of the
medical records which demonstrates that the evidence does not support the extent of the
functional cardiac limitations claimed by plaintiff.  In so doing, the ALJ compared and
contrasted plaintiff's claims with the evidence of record, including specific citations to the record
evidence.  See id.

        The opinion of Dr. Owens describes more severe functional limitations than
ultimately adopted by the ALJ in the RFC assessment.  See R. 494-99.  In particular, plaintiff
points to Dr. Owens' findings that plaintiff would miss one to two workdays per month and/or
take unscheduled breaks.  See Pl.'s Br. at 7-8.  The ALJ reasoned that the opinion "is persuasive
relative to the claimant's capacity for sedentary level exertional work and limited postural

activities." (R. 23.) However, the ALJ further determined that the "opinion as to the claimant's

need for unscheduled breaks and the likelihood of missing work time, as well as the extent to

which his physical symptoms would interfere with the capacity for attention and concentration,

are found not to be persuasive or consistent with the substantial evidence of record." Id. The

ALJ further noted that he "agrees with the assessment of Dr. Owens that the claimant would be

capable of low stress jobs." Id. Additionally, the ALJ explained that "the objective medical

evidence, as outlined above, does not show such significant abnormality as to explain the

claimant's physical allegations." The ALJ reasoned:

> The treatment for the claimant's cardiology impairments has been essentially
> routine and conservative in nature to this point. He has received treatment form
> specialists for his impairments and has been prescribed and taken appropriate
> medications. The medications have been relatively effective in controlling his
> symptoms, and the frequency and dosages of those medications has remained
> relatively unchanged. He was found to be capable of mild to moderate aerobic
> activity, and cardiologic testing would indicate that sedentary-type work would
> not in any way be prohibitive. Overall, the gravity of the claimant's physical
> complaints seem to exceed the objective medical evidence available and his
> impairments are not totally work-preclusive.

Id.

Indeed, the medical evidence discussed by the ALJ in the RFC assessment

supports Dr. Owens' finding that plaintiff is capable of low stress jobs and the ALJ's

determination that plaintiff is capable of a range of sedentary work. For example, in analyzing

the medical evidence in the RFC discussion, the ALJ discussed the occasions that plaintiff

sought treatment at the hospital for chest pain. That is, plaintiff presented to the emergency

room for treatment in July 2015 after suffering chest pain and was diagnosed with hypertrophic

cardiomyopathy with a systolic murmur. See R. 21, 290. He was advised against aggressive

exercise and drinking caffeine or alcohol, and counseled to lose weight. See id. He was

prescribed medication and a December 2015 MRI revealed diffuse hypertrophic cardiomyopathy

with the hypertrophy resulting in mild narrowing of the left ventricular outflow tract.  See R. 21, 231-32.  After presenting to the emergency room in February 2016 and May 2016 for treatment of chest pain, plaintiff was discharged and directed to continue his present medication regimen. See R. 21, 362-77.

The ALJ also considered the record evidence pertaining to plaintiff's continued treatment for his cardiac issues.  For example, the ALJ noted that a July 2016 stress test revealed an ejection fraction rate of 75% with no evidence of ischemia.  See R. 21, 400-13.  In February 2017, plaintiff wore a Holter monitor for forty-eight hours, which revealed no supraventricular or ventricular arrhythmias throughout the study and plaintiff's diary did not report any symptoms. See R. 21, 335.  Nonspecific ST abnormality was noted.  (R. 335.)  Follow-up stress testing in July 2017 indicates that routine exercise was recommended, although plaintiff was advised to avoid strenuous activity and burst activity, as well as heavy lifting.  See R. 21, 421.  In addition, the dosage of metoprolol succinate was increased.  (R. 421.)  Plaintiff's medication regimen also was altered in December 2017 and February 2018.  See R. 21, 427, 434.

The ALJ also discussed the treatment notes of cardiologist David Frankel, M.D., a cardiac electrophysiologist to whom plaintiff was referred.  (R. 22.)  Dr. Frankel's treatment notes reflect that he evaluated plaintiff on July 16, 2018.  See R. 448-54.  Dr. Frankel noted that plaintiff reported experiencing an episode of presyncope in December 2017 which occurred when playing video games and which resolved spontaneously.  (R. 443.)  Dr. Frankel's notes also indicate that a "follow up monitor . . . was unremarkable," that plaintiff had "done well" since that episode, and that he had experience "a few subsequent episodes of dizziness but none as severe.  Otherwise he has done well.  He has never had syncope."  Id.  A physical examination revealed normal cardiovascular findings.  (R. 444.)  An electrocardiogram was performed that

day and revealed no significant changes compared to a prior study.  (R. 445.)  Dr. Frankel

recommended that plaintiff proceed with an electrophysiologic study for further risk

stratification.  (R. 446.)[9]

        Plaintiff argues that the ALJ erred by dismissing Dr. Owens' findings that

plaintiff would need to miss two workdays per month and/or take unscheduled breaks.  (Pl.'s Br.

at 7-8.)  As noted supra, "[a]n ALJ may accept some portions of a medical source's opinion

while rejecting other opinions from the same source."  Connors, 2017 WL 4400758, at *5.  The

ALJ was permitted to weigh the opinion in the manner he did, accepting Dr. Owens' opinion that

plaintiff is capable of low stress jobs.  See 20 C.F.R. §§ 404.1527(c), 416.927(c) (setting forth

factors for weighing medical opinions).  See also Armbruster v. Colvin, 2016 WL 5930913, at *7

(E.D. Pa. Oct. 12, 2016) (finding no error in the ALJ's attribution of various amounts of weight

to the opinion evidence).  Here, the ALJ offered a valid explanation for his determination that

plaintiff was capable of sedentary work as detailed in the decision.  See Hess, 931 F.3d at 213-14

(ALJ must offer a valid explanation for the limitations included in the RFC assessment).

        The court notes that the Commissioner's regulations provide that "a statement by

a medical source that you are disabled or unable to work does not mean that we will determine

that you are disabled."  20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).  "[A] statement by a

plaintiff's treating physician supporting an assertion that [he] is 'disabled' or 'unable to work' is

not dispositive of the issue."  Adorno v. Shalala, 40 F.3d 43, 47-48 (3d Cir. 1994) (citing Wright

v. Sullivan, 900 F.2d 675, 683 (3d Cir. 1990)).  "The law is clear . . . that the opinion of a

treating physician does not bind the ALJ on the issue of functional capacity."  Brown, 649 F.3d

---

[9]    The ALJ noted that as of the date of the administrative hearing, no such study, if
completed, had been submitted into evidence.  (R. 22.)

at 196 n.2.  See also Breen v. Comm'r of Soc. Sec., 504 F. App'x 96, 99 n.3 (3d Cir. 2012) (not

precedential) ("While treating medical source opinions may be afforded controlling weight on

issues such as the nature and severity of a claimant's impairment, 20 C.F.R. § 404.1527(c)(2),

opinions on issues reserved to the Commissioner – i.e., a claimant's residual functional capacity

– are not entitled to 'any special significance' regardless of the source of the opinion, id. (d)(2)-

(3).").[10]

> The court is mindful that this court's review is limited to determining whether the

Commissioner's decision is "supported by substantial evidence."  42 U.S.C. § 405(g); Adorno v.

Shalala, 40 F.3d 43, 46 (3d Cir. 1994).  This court may not undertake a de novo review of the

Commissioner's decision or re-weigh the evidence of record.  Monsour Med. Ctr., 806 F.2d at

1190-91.  See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are

not permitted to re-weigh the evidence or impose their own factual determinations."); Burns, 312

F.3d at 118 ("We also have made clear that we are not permitted to weigh the evidence or

substitute our own conclusions for that of the fact-finder.").  However, plaintiff essentially seeks

to have this court re-weigh the evidence and reach a different conclusion.  A reviewing court

may not set the Commissioner's decision aside if it is supported by substantial evidence, even if

the court would have decided the factual inquiry differently.  Hartranft v. Apfel, 181 F.3d 358,

360 (3d Cir. 1999).  In reaching his RFC determination, the ALJ acted in accordance with the

Commissioner's regulations and Third Circuit case law.  Substantial evidence supports the ALJ's

analysis.  See Biestek, 139 S. Ct. at 1154 (Substantial evidence "means -- and means only –

---

[10]    Additionally, the court notes that Dr. Owens' opinion consisted of check-the-box and fill-in-the-blank forms and offer weak evidence in support of plaintiff's claims.  See R. 494-99; see also Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("[F]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."); Byrd v. Berryhill, 2018 WL 2009535, at *3 (E.D. Pa. Apr. 27, 2018) (same).

'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).  Remand is not warranted on this issue.

### B.     Cumulative Effect of Impairments

Plaintiff also argues that he suffers from "significant cardiac impairment and gastroenterological impairment" and that his "ability to perform [substantial gainful activity] is further eroded by neurodevelopmental and intellectual limitations."  (Pl.'s Br. at 8.)  Without a fulsome discussion, plaintiff asserts that the ALJ failed to take into account the totality of plaintiff's impairments and instead "looks at each impairment individually in making his improper determination that plaintiff is able to perform a full range of sedentary work."  <u>Id.</u> at 8-9.

The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he is capable of performing work and is not disabled.  <u>See</u> <u>Beeks v. Comm'r of Soc. Sec.</u>, 424 F. App'x 163, 164 (3d Cir. 2011) (not precedential) (citing <u>Plummer</u>, 186 F.3d at 428).  <u>See also</u> 20 C.F.R. §§ 404.1520(c), 416.920(c), 404.1523(c), 416.923(c), 404.1545(a), 416.945(a).  In the present case, the ALJ's decision shows that, throughout the sequential analysis, he considered the cumulative effect of the severe and non-severe impairments that plaintiff presented.  At step two, the ALJ noted that "unspecified gastrointestinal issues," <u>inter alia</u>, while medically determinable impairments, are not severe impairments under the Commissioner's regulations.  <u>See</u> R. 18.  In so finding, the ALJ stated the following with respect to the gastrointestinal issues specifically:

> [Plaintiff] presented to the emergency room with complaints of right flank pain with microhematuria in November 2015.  A CT scan and ultrasound of the abdomen, a 3 mm calculus within the proximal right ureter with mild right-sided hydronephrosis was indicated [sic].  (Exhibit 3F)  In August 2016, he presented to

the hospital emergency room with complaints of rectal bleeding associated with abdominal pain.  An unremarkable colonoscopy from the prior year was noted after similar complaints of rectal bleeding.  On this occasion, he was found to have no blood on rectal examination and discharged.  An endoscopy in 2017 was normal.  A history of colitis, as reported by the claimant, was noted.  He again presented to the emergency room with complaints of abdominal pain and associated chest pain and nausea in January 2018.  A CT scan showed mildly prominent mesenteric lymph nodes with may reflect mild mesenteric adenitis, but otherwise showed no acute inflammatory processes in the abdomen or pelvis.

Id.

At step three, the ALJ again considered the cardiac impairments, obesity, and plaintiff's intellectual functioning.  See R. 19-20.  In the RFC analysis, the ALJ discussed plaintiff's mental impairments at length, offering a well-reasoned, developed analysis.  See R. 21-24.  He also considered plaintiff's testimony concerning colitis, see R. 21, and analyzed the opinion and medical source statement of the State agency consultative examiner, Kathleen Mullin, M.D., see R. 22-23.  Dr. Mullin conducted a physical examination of plaintiff and considered plaintiff's diagnoses of hypertrophic cardiomyopathy, intermittent bloody stools, and obesity.  See R. 304-07.  In fact, the ALJ ultimately determined that plaintiff was "more limited exertionally" than found by Dr. Mullin, who took such impairments into account in rendering her opinion.  (R. 23.)

Furthermore, with respect to the record evidence relating to plaintiff's gastrointestinal issues, such documentation shows that plaintiff sought treatment, but does not demonstrate functional limitations resulting from these issues.  "A diagnosis alone . . . does not demonstrate disability."  See Foley v. Comm'r of Soc. Sec., 349 F. App'x 805, 808 (3d Cir. 2009) (not precedential) (citing Petition of Sullivan, 904 F.2d 826, 845 (3d Cir. 1990)).  Moreover, despite plaintiff's complaints of pain in the medical records and at the administrative hearing, Third Circuit case law does not dictate that a plaintiff's complaints of pain must be

accepted by the ALJ.  Rather, an ALJ must consider the statements of a claimant concerning his symptoms, but the ALJ is not required to credit them.  Chandler, 667 F.3d at 363 (citing SSR 96-7p, 20 C.F.R. § 404.1529(a)).[11]  In this case, the ALJ credited plaintiff's subjective complaints to an extent by limiting him to sedentary work as detailed in the decision.

Thus, the ALJ's decision shows that he expressly considered the evidence that supported, and detracted from, plaintiff's claimed limitations, with explicit citation to the relevant medical records.  See R. 18-24.  See also Schuster v. Astrue, 879 F. Supp. 2d 461, 466 (E.D. Pa. 2012) (noting that a reviewing court "is not required to read the ALJ's opinion in a vacuum" and that "the reviewing court [must] examine the record as a whole to determine whether the ALJ's reasoning is supported by substantial evidence") (internal citations and quotations omitted).  Here, the ALJ acted in accordance with the Commissioner's regulations and Third Circuit case law when he considered the records and determined that the evidence as a whole was not supportive of plaintiff's claimed limitations.[12]

---

[11]     Social Security Ruling 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996), was superseded by Social Security Ruling 16-3p effective March 28, 2016.  See 2016 WL 1237954 (S.S.A. Mar. 24, 2016).  SSR 16-3p provides guidance about how the Social Security Administration will evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims.  2016 WL 1119029 (S.S.A. Mar. 16, 2016).  SSR 16-3p was republished on October 25, 2017, with a revision detailing how the Commissioner enforces the applicable date and updated citations to reflect the revised regulations that became effective on March 27, 2017.  See 2017 WL 5180304 (S.S.A. Oct. 25, 2017).

[12]     An ALJ need not cite all evidence a claimant presents.  Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 203-04 (3d Cir. 2008).  That is, "[a] written evaluation of every piece of evidence is not required, so long as the ALJ articulates at some minimum level her analysis of a particular line of evidence."  Phillips v. Barnhart, 91 F. App'x 775, 780 n.7 (3d Cir. 2004) (not precedential).  "Moreover, the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it."  Id. (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)).
         Moreover, as the Third Circuit recently found, "no incantations are required at steps four and five simply because a particular finding has been made at steps two and three.  Those portions of the disability analysis serve distinct purposes and may be expressed in different ways."  Hess, 931 F.3d at 209.  The court further noted that "social security regulations permit,

Again, plaintiff seeks to have the court re-weigh the evidence which it may not do.  See Chandler, 667 F.3d at 359 ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."); see also Burns, 312 F.3d at 118 (same).  The court finds that the ALJ considered the cumulative effects of plaintiff's impairments and substantial evidence supports the ALJ's finding that plaintiff's RFC enables him to perform work in the national economy.  Remand on this issue is not warranted.

### C.    Hypothetical Question Posed to the VE

Plaintiff also contends that the ALJ posed an improper hypothetical question to the VE; therefore, the VE's conclusions are flawed.  (Pl.'s Br. at 9-10.)  Specifically, plaintiff avers that the hypothetical question failed to take into account the full range of limitations presented by plaintiff's cardiac and gastroenterological issues.  Id. at 9.  As defendant correctly posits, however, plaintiff points to no additional functional limitations resulting from his impairments that were not addressed by the VE.  (Def.'s Br. at 10.)[13]

---

and indeed require, an ALJ to offer a narrative discussion describing how the evidence supports each limitation at step four of the disability analysis.  That suggests a wide range of limitation language is permissible, regardless of what the ALJ found at earlier steps of the analysis, so long as the chosen limitation language is explained."  Id. (internal quotation and citation omitted). The Hess court further explained that the functional limitation findings at steps two and three, while important to the RFC analysis, "do not dictate the terms of the ALJ's statement of the claimant's limitation" at steps four and five.  Id. at 209-210.

[13]    The ultimate burden of proving disability within the meaning of the Act lies with the plaintiff.  See 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(H)(i) (providing that "[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner may require"); see also 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us that you are blind or disabled.  You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled.").  It is well-established that the plaintiff bears the burden of establishing steps one through four, while the burden shifts to the Commissioner at step five.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

Additionally, the Third Circuit has explained that "objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself." Rutherford v. Barnhart, 399 F.3d 546, 554 n.8 (3d Cir. 2005). The court stated:

> That is, a claimant can frame a challenge to an ALJ's reliance on vocational expert testimony at step 5 in one of two ways: (1) that the testimony cannot be relied upon because the ALJ failed to convey limitations to the vocational expert that were properly identified in the RFC assessment, or (2) that the testimony cannot be relied upon because the ALJ failed to recognize credibly established limitations during the RFC assessment and so did not convey those limitations to the vocational expert. Challenges of the latter variety (like Rutherford's here) are really best understood as challenges to the RFC assessment itself.

Id. Here, plaintiff's challenge to the hypothetical question boils down to an attack on the RFC assessment itself. As discussed supra, the ALJ thoroughly considered the medical evidence in assessing plaintiff's RFC, including the medical records and opinion evidence, in accordance with the Commissioner's regulations and guidelines. See R. 18-24. The ALJ proffered specific reasons, that are supported by the evidence, for assessing plaintiff's RFC as he did. Ultimately, the final responsibility for determining a claimant's RFC is reserved exclusively for the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d), 404.1545, 416.945, 404.1546, 416.946.

Furthermore, it is well-established that the ALJ must include in the hypothetical to the VE all of a claimant's limitations which are supported by the medical record. Plummer, 186 F.3d at 431; Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). However, an ALJ need not "submit to the [VE] every impairment alleged by a claimant." Zirnsak v. Colvin, 777 F.3d 607, 615 (3d Cir. 2014) (emphasis in original) (citing Rutherford, 399 F.3d at 554). An ALJ is only required to submit credibly established limitations. Id. If a limitation "is supported by some medical evidence but controverted by other evidence in the record, it is within the ALJ's discretion whether to submit the limitation to the VE." Id. A VE's testimony in response

to a hypothetical "that fairly set forth every credible limitation established by the physical evidence," may be relied upon by the ALJ as substantial evidence.  <u>Plummer</u>, 186 F.3d at 431. The ALJ structured the RFC to accommodate plaintiff's limitations that were supported by the record.

The court finds that the ALJ sufficiently explained his reasons for finding plaintiff capable of performing a limited range of sedentary work and that conclusion is supported by substantial evidence.  Remand of the ALJ's decision on this issue is not warranted.

## V.    CONCLUSION

After a careful and thorough review of all of the evidence in the record, and for the reasons set forth above, this court finds that the ALJ's findings are supported by substantial evidence.  Accordingly, plaintiff's Request for Review will be denied.

An appropriate Order accompanies this opinion.

BY THE COURT:


___/s/ Thomas J. Rueter_____
THOMAS J. RUETER
United States Magistrate Judge

22